[Cite as *State v. Watson*, 2014-Ohio-2395.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 100356**

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## FRANK WATSON

DEFENDANT-APPELLANT

**JUDGMENT:**
REVERSED AND REMANDED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-13-574622-A

**BEFORE:** Keough, J., Rocco, P.J., and E.A. Gallagher, J.

**RELEASED AND JOURNALIZED:** June 5, 2014

**ATTORNEY FOR APPELLANT**

Allison S. Breneman
1220 West 6th Street
Suite 303
Cleveland, Ohio 44113

**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor
By: Amy Venesile
Assistant Prosecuting Attorney
The Justice Center, 9th Floor
1200 Ontario Street
Cleveland, Ohio 44113

KATHLEEN ANN KEOUGH, J.:

{¶1} Defendant-appellant, Frank Watson, appeals from the trial court's judgment, rendered after a bench trial, finding him guilty of assault. For the reasons that follow, we reverse Watson's conviction and remand with instructions to the trial court to enter judgment vacating Watson's conviction. I. Background

{¶2} Watson was indicted on two counts of aggravated burglary in violation of R.C. 2911.11(A)(1) and (2); one count of felonious assault in violation of R.C. 2903.11(A)(2); and one count of assault in violation of R.C. 2903.13(A). His codefendant, Dazhanae Watson, was indicted on one count of assault in violation of R.C. 2903.13(A). The cases were tried together to the bench.

{¶3} At trial, Terrie Morris testified that her 16-year-old daughter, R.G., came home on May 16, 2013, and told her that T.W. and her mother were coming over because T.W. wanted to fight R.W. R.G. had recently returned home to live with Morris after living with T.W. and her family for several weeks.

{¶4} Morris testified that when T.W. and her mother arrived in her yard, she stood on her porch and questioned T.W.'s mother about why the girls were going to fight. R.G., who had been standing behind Morris and exchanging words with T.W., suddenly came off the porch and began fighting with T.W. When R.G. grabbed a golf club, T.W. dropped the brick she had been carrying, and T.W. and her mother got in their car and drove off.

**{¶5}** Ten or fifteen minutes later, they came back to Morris's house and said that T.W. had lost her glasses in the yard. Morris told them she and R.G. did not have T.W.'s glasses and ordered them to leave. As T.W. was getting back in the car, Morris heard T.W.'s mother say, "Don't worry about it; we'll deal with them later."

**{¶6}** Morris testified that her doorbell rang at approximately 9 p.m. that evening. When she answered the door, she saw T.W. and her sister Dazhanae standing on her porch. They began arguing with Morris when she told them to leave. According to Morris, "the next thing I know, hands was swinging everywhere." Morris testified that she fought with Dazhanae, and when R.G. came out to help her, T.W. began fighting with R.G. When Morris saw T.W. fall over the porch railing into the bushes, she told R.G. to call someone for help.

**{¶7}** Morris testified that she then heard a man yell, "What you going to do?", heard R.G. say, "No," and saw R.G. backing up through the front door into the house. Morris said she broke free from Dazhanae and went into her house to help R.G. She found R.G. backed up against the wall by Watson, who was in front of her, swinging a shovel and yelling, "What you going to do? You all ain't going to do nothing." Morris said she then took her gun from a drawer and pointed it at Watson, who immediately turned and ran out of the house. T.W. and Dazhanae, Watson's nieces, also ran to their car, which was parked a short distance down the street, and they all drove away.

**{¶8}** R.G.'s testimony was consistent with Morris's. She said that as she was dialing the phone to call for help after T.W. fell in the bushes, she saw Watson pick up a

shovel from the front porch. He then knocked the phone out of her hand and yelled, "What you going to do?" R.G. said that she grabbed a golf club from the porch, swung it, and hit Watson on his arm. He then hit her right shoulder with the shovel. She testified that she fell backward through the screen door, and Watson followed her into the house, yelling at her. R.G. testified that when her mother pointed her gun at Watson, he ran out of the house.

{¶9} After the Watsons fled, Morris called the police, who responded to the scene. R.G. was treated at Lakewood Hospital for a contusion to her upper right arm and a scrape on her knee.

{¶10} After the trial court denied Watson and Dazhanae's Crim.R. 29(A) motions for acquittal, Dazhanae testified for the defense. She said that Watson drove her and T.W. to R.G.'s house at approximately 9 p.m. to get T.W.'s glasses. She said that Morris opened the door and hit her first. According to Dazhanae, as she and Morris were fighting, R.G. came out and started hitting her, so T.W. started fighting with R.G. R.G. then went back into her house and came out with a golf club; Watson then came on the porch and R.G. hit him in the neck with the club. Dazhanae said that Watson then held the front door shut so R.G. could not get out of the house. She denied that Watson ever entered the house or that he ever picked up a shovel. She said that Morris broke away from fighting with her, went into the house, and came out with a gun, at which point they all ran away. Dazhanae testified that she, T.W., and Watson were the victims in the fight, not Morris and R.G.

**{¶11}**    The trial court found Watson not guilty of aggravated burglary and felonious assault (Counts 1, 2, and 3) but guilty of assault, a first-degree misdemeanor (Count 4).   The court also found Dazhanae not guilty of assault.   The court subsequently sentenced Watson to six months in jail plus costs.[1]   This appeal followed.

## II.   Analysis

**{¶12}** In his first assignment of error, Watson argues that his assault conviction was not supported by sufficient evidence.

**{¶13}**    The test for sufficiency requires a determination of whether the prosecution met its burden of production at trial.   *State v. Bowden*, 8th Dist. Cuyahoga No. 92266, 2009-Ohio-3598, ¶ 12.   An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt.   The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Thompkins*, 78 Ohio St.3d 380, 386, 1997-Ohio-52, 678 N.E.2d 541.

---

[1]The trial court imposed costs in the journal entry of sentencing but did not mention court costs at the sentencing hearing.   This was error because it denied Watson the opportunity to claim indigency and seek a waiver of the payment of court costs.   *State v. Joseph*, 125 Ohio St.3d 76, 2010-Ohio-954, 926 N.E.2d 278.   Where a trial court imposes court costs in the judgment entry without mentioning costs at sentencing, an appellate court must reverse the portion of the trial court's judgment imposing court costs and remand to allow the defendant the opportunity to move for a waiver of the payment of court costs.   A remand is not necessary in this case, however, because we reverse Watson's conviction in its entirety.

{¶14}  Watson contends that the evidence was insufficient to show that he hit R.G. with a shovel.   He points out that R.G. admitted that her bruise went away after only a few days — which he contends would be unlikely if she had in fact been hit in her arm with a shovel — and that Dazhanae testified that he never picked up a shovel or hit R.G. with it. Therefore, he argues the evidence was insufficient to support his conviction for assault. We find the evidence insufficient, but for reasons other than those offered by Watson.

{¶15} Watson was found guilty of Count 4 of the indictment, which charged him with assault in violation of R.C. 2903.13(A).   More specifically, it charged that Watson "[o]n or about May 16, 2013, did knowingly cause or attempt to cause physical harm to Terrie Morris."   It did not charge Watson with causing or attempting to cause physical harm to R.G.   The indictment was never amended to add R.G. as the victim of Watson's alleged assault.

{¶16} In its brief on appeal, the state argues that the evidence was sufficient to support the assault conviction because

> Terrie Morris testified that she heard her daughter getting hit, saw her daughter crying and in fear of Frank Watson as he was yelling at her and approaching her.  R.G. testified that Frank Watson hit her in the arm with a metal shovel which caused her to fall through and break the screen on the front door.

The state contends that this evidence, if believed, was sufficient to support Watson's conviction for assaulting R.G.

{¶17} But Count 4 of the indictment charged Watson with assaulting Morris, not R.G.   And the state offered no evidence whatsoever that Watson caused or attempted to cause physical harm to Morris.   All of the evidence demonstrated that

Dazhanae fought only with Morris and Watson fought only with R.G. Indeed, in opposing Watson's Crim.R. 29(A) motion for acquittal before the trial court, the prosecutor cited only to evidence relating to Watson's assault on R.G.:

As it relates now to defendant Frank Watson, again, the testimony is very clear assuming — you know, the facts in the light most favorable to the state, defendant Frank Watson comes up onto the porch, he strikes R.G., the 16-year-old, in the arm. That's corroborated by the medical records showing the contusion to her right arm. As she described, he then knocks her into the home and then proceeds to follow her into the home, carrying the same shovel with him the entire way, yelling at her, "What you gonna do? What you gonna do?"

The state has met each and every element as charged in the indictment. Accordingly, the state would ask this court to deny defendant's Rule 29 motion.

{¶18} Our review of the record demonstrates that Frank's counsel moved for acquittal under Crim.R. 29(A) regarding only Counts 1, 2, and 3; inexplicably, he did not ask for acquittal on Count 4 and thus waived any insufficiency error regarding Count 4 on appeal. *State ex rel. Zollner v. Indus. Comm.*, 66 Ohio St.3d 276, 277, 1993-Ohio-49, 611 N.E.2d 830. Under Crim.R. 52(B), however, plain errors affecting substantial rights may be noticed by an appellate court even though they were not brought to the attention of the trial court. An error is plain if it is "obvious" and "but for the error, the outcome of the trial clearly would have been otherwise." *State v. Perez*, 124 Ohio St.3d 122, 2009-Ohio-6179, 920 N.E.2d 104, ¶ 181, quoting *State v. Barnes*, 94 Ohio St.3d 21, 2002-Ohio-68, 759 N.E.2d 1240, and *State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978), paragraph two of the syllabus. Courts are to notice plain error under Crim.R.

52(B) "with the utmost caution, under exceptional circumstances, and only to prevent a manifest miscarriage of justice." *Barnes* at 27. This is that exceptional circumstance.

{¶19} Because the state offered no evidence at trial to correspond to the allegation contained in Count 4 of the indictment, a rational trier of fact could not have found the essential elements of the crime proven beyond a reasonable doubt. Accordingly, we find plain error in the trial court's failure to grant a judgment of acquittal under Crim.R. 29(A) regarding Count 4.[2] Therefore, we reverse Watson's conviction on Count 4 and remand with instructions to the trial court to issue a judgment entry vacating Watson's conviction.

{¶20} In light of our resolution of Watson's first assignment of error, the second assignment of error, which asserts that the conviction was against the manifest weight of the evidence, is rendered moot and we need not address it. App.R. 12(A)(1)(c).

{¶21} Judgment reversed and remanded.

It is ordered that appellant recover from appellee costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

---

[2]Crim.R. 29(A) provides that a court "shall," "on its own motion," "order the entry of a judgment of acquittal or one or more offenses charged in the indictment, information, or complaint, if the evidence is insufficient to sustain a conviction of such offense or offenses."

KATHLEEN ANN KEOUGH, JUDGE

KENNETH A. ROCCO, P.J., and
EILEEN A. GALLAGHER, J., CONCUR